The STATE of Ohio, Appellee,

v.

SAUNDERS, Appellant.

[Cite as *State v. Saunders* (1994), 98 Ohio App.3d 355.]

Court of Appeals of Ohio,
Lucas County.

No. L-93-223.

Decided Nov. 4, 1994.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Joseph J. Solomon,* Assistant Prosecuting Attorney, for appellee.

*Robert Z. Kaplan, Jeffrey J. Helmick* and *Richard S. Walinski,* for appellant.

*Per Curiam.*

This matter is before the court on appeal from the Lucas County Court of Common Pleas.

On September 5, 1992, Farley Bell, and appellant, Stephanie Marie Saunders smoked crack cocaine at appellant's residence. Farley Bell was a thirty-five year-old former professional football player who stood approximately six feet, four inches tall. Appellant was twenty-four years old, five feet, nine inches tall, weighing approximately one-hundred thirty pounds.

Farley Bell stayed at the residence overnight. The next day, he gave appellant money and sent her out to buy crack for the two of them. The third time Farley Bell sent appellant out for crack, she did not return with the money, the crack or his car.

An angry Farley Bell later found appellant outside the home of Jennell Williams. When appellant saw Farley Bell, she ran into the home through the back and locked the door. She ran through the home and exited from the front door. She then hid in some nearby bushes. He soon found her and began hitting her. He grabbed her legs and dragged her from the bushes. He then kicked appellant and shoved her into a cement wall. Appellant's friend, Morgan "Squeaky" Garrett approached and told Farley Bell to leave appellant alone. Appellant then ran to the apartment of another friend, Cookie Watson. Farley Bell caught up with her and attempted to kick in the door of the apartment. Cookie Watson's boyfriend insisted that appellant leave the apartment because of the trouble caused by Farley Bell. Before they turned her out, Cookie Watson gave appellant a knife for protection. Within minutes of leaving the apartment, appellant encountered Farley Bell. Appellant began walking quickly down the street in an attempt to avoid him. However, Farley Bell came up from behind appellant and hit her in the head. Appellant turned around and noticed that Farley Bell was getting ready to hit her again. At that moment, appellant stabbed Farley Bell in his chest with the knife. When Farley Bell continued to come toward appellant, she ran away. Farley Bell later died as a result of the stab wound.

On September 10, 1992, appellant was indicted on one count of murder, a violation of R.C. 2903.02. Appellant argued at trial that she stabbed Farley Bell in self-defense. The relevant portions of the prosecutor's closing argument, defense counsel's objections and the court's curative instructions are as follows:

"Prosecutor: * * * I want you to ask yourself these questions: First, who stands the most to gain, of all these witnesses you heard testify, by embellishing, lying, or fabricating on the stand? It's clear that she [appellant] stands much to gain by embellishing on how severely she supposedly was beaten. She's had

eight months to sit in the jail to think about what she's going to testify to and she knows that if she can convince you she was under this extreme fear—

"Defense Counsel: Objection.

"The Court: Sustained. Jury is ordered to disregard the last statement of the prosecutor.

" * * *

"Prosecutor: After seeing on T.V. that Farley Bell had died some 24 hours later; and also realizing—again, she conceded this when I questioned her—realizing that Katherine Dale, an eyewitness, saw her, her identity was blown. She wasn't going to get away from this. At that point in time, she goes to the police. And even then, ladies and gentlemen, even twenty-four hours when she first goes to the police, there's no evidence whatsoever that this defendant told the police this self-defense story.

"Defense Counsel: Objection.

"The Court: Sustained. Jury is ordered to disregard that statement."

Following the prosecutor's closing argument and outside the hearing of the jury, defense counsel orally moved for a mistrial based on prosecutorial misconduct. The court denied the motion. On May 13, 1993, a jury found her guilty of voluntary manslaughter. She was sentenced to serve no less than eight nor more than twenty-five years in prison. On May 27, 1993, defense counsel filed a motion for a new trial that the court denied. Appellant now appeals, setting forth the following assignment of error:

"The trial court erred in not granting the defendant's motion for a mistrial, or in the alternative, the defendant's motion for a new trial under Crim.Rule 33, based upon the prosecutor's improper comments during the rebuttal portion of the state's closing argument."

Appellant contends that the prosecutor's mention, in his closing argument, of appellant's postarrest silence, violated her right to due process and a fair trial that the trial court could not remedy through instructions.

A motion for mistrial is addressed to the sound discretion of the trial court. *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900. For the most part, a motion for a new trial pursuant to Crim.R. 33 is also addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, when the motion alleges prosecutorial misconduct, a reviewing court must undertake a due process analysis to determine whether the conduct of the prosecutor deprived the defendant of his or her due process right to a fair trial. *State v. Johnston* (1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898, 910–911.

It is well settled that prosecutors are generally given a certain degree of latitude in their closing arguments. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Id.* at 14, 14 OBR at 318, 470 N.E.2d at 885.

Appellant alleges that the prosecutor in this case committed a "*Doyle* violation," so named for the holding in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. In *Doyle,* the defendant was arrested for selling marijuana and was promptly read his *Miranda* rights. At trial, his defense was that he had been framed. The prosecutor, on cross-examination, asked the defendant why he did not tell the police officer at the time of his arrest that he had been framed. Defense counsel objected and was overruled by the trial court. Justice Powell, writing for the court, stated:

"While it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

" * * *

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 618–619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98.

In *Fletcher v. Weir* (1982), 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490, the Supreme Court distinguished *Doyle* and held that where a defendant was not advised of his *Miranda* rights, it is not a violation of due process "for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." *Fletcher, supra,* at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494.

In the present case, there is no evidence in the record indicating that appellant was read her *Miranda* rights. However, this case can be distinguished from *Fletcher* in that appellant's postarrest silence was raised in the prosecutor's closing argument rather than in the prosecutor's cross-examination of appellant. When a defendant's postarrest silence is raised for the first time in the prosecutor's closing argument, it is not being raised for impeachment purposes and the

defendant is further prejudiced in that he or she is afforded no opportunity to call rebuttal witnesses. We therefore find the prosecutor's action in this particular case to be a violation of due process and accordingly, the *Doyle* case applies.

■ *Doyle* violations are reviewed under the harmless error standard. *United States v. Newman* (C.A.9,1991), 943 F.2d 1155, 1158. The test is whether the comment was extensive, whether an inference of guilt from silence is stressed to the jury as a basis of conviction, and whether there is evidence that could have supported acquittal. *Id.*

■ Our review of the closing argument shows that the prosecutor deliberately remarked on appellant's postarrest silence in a last-ditch effort to convince the jury that her self-defense argument was pure fabrication. Notwithstanding the trial court's curative instructions, the effect of the prosecutor's remarks was to suggest to the jury that appellant must be guilty because an innocent person would not have remained silent. Furthermore, the record in this case contains evidence supporting appellant's self-defense claim. Witness testimony shows that despite the fact that Farley Bell struck appellant numerous times, she repeatedly and to no avail tried to escape the wrath of the former professional football player. We conclude that the prosecutor's remarks in his closing argument did not amount to harmless error. Rather, the prosecutor's remarks prejudiced appellant and prevented her from having a fair trial. Appellant's sole assignment of error is found well taken. This case is hereby reversed and remanded to the Lucas County Court of Common Pleas. Court costs assessed to appellee.

*Judgment reversed*
*and cause remanded.*

HANDWORK, MELVIN L. RESNICK and SHERCK, JJ., concur.