OPINION
Appellant sets forth the following assignments of error:
"First Assignment of Error
 "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR A MISTRIAL WHEN THE STATE COMMITTED DOYLE ERROR AND ALSO MISLED THE JURY DURING CLOSING ARGUMENT. TR 882, 1023-1027.
"Second Assignment of Error
 "THE TRIAL COURT ERRED IN REFUSING TO PERMIT ALAN KONOP TO TESTIFY THAT APPELLANT HAD TOLD HIM A VERSION OF EVENTS CONSISTENT WITH [SIC] THAT HE TOLD MICHAEL SALLAH. TR 859-861, 1027-1029.
"Third Assignment of Error
 "THE TRIAL COURT ERRED IN SEALING THE JURY'S FIRST TWO VERDICTS AND KEEPING THEM FROM THE JURY UNTIL THEY HAD FINISHED DELIBERATING."
The undisputed facts that are relevant to the issues raised on appeal are as follows. On the afternoon of April 12, 1996, appellant Robert Sybert accompanied Barbara Lammie, with whom he had recently had a romantic relationship, as she drove from Toledo to the Detroit area to make deliveries associated with her job. Upon arriving back in Toledo in the late afternoon, they stopped at a bar and had several drinks. They then went to the racetrack for a while and then to two other bars. After leaving the last bar late that night, Lammie drove appellant to the motel where he was living. Upon arriving at the motel, appellant beat Lammie severely in his room. Approximately two hours later, Lammie drove to the home of a friend, who took her to the hospital where she was treated for a nasal bone fracture, a laceration above her left eye and facial abrasions.
The following morning, Lammie was resting at home when her twenty-two year-old son, Joseph Stopera, Jr., came to see her. Lammie and her son talked briefly and Stopera left. At approximately 8:00 p.m. on April 13, 1996, Stopera's body was found in the road next to his car on a street in Sylvania Township. Stopera was taken to the hospital, where he died of two gunshot wounds, one to the chest and one to the back of the head. Later that night, police arrested appellant in connection with the murder. Two shell casings found at the scene of the shooting were later determined to have come from a gun found in appellant's car at the time of his arrest.
On May 3, 1996, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1) and one count of abduction in violation of R.C. 2905.02 in connection with the assault on Barbara Lammie. The abduction count contained a physical harm specification pursuant to R.C. 2929.11(B)(6) or (7) and 2941.143. This case was assigned docket number CR96-5862. On May 17, 1996, appellant was indicted on one count of murder in violation of R.C. 2903.02 in connection with the death of Joseph Stopera. The indictment included a firearm specification pursuant to R.C. 2929.71 and 2941.141. The case was assigned docket number CR96-5822.
The two cases were not formally consolidated but they proceeded together to trial before a jury. Trial was held on September 16-20, 1996. On September 23, 1996, the jury returned verdicts of guilty of murder with the accompanying firearm specification, guilty of felonious assault, and not guilty as to the charge of abduction. Appellant filed timely notices of appeal and on October 25, 1996, this court sua sponte consolidated the two cases.
In his first assignment of error, appellant asserts that the trial court erred by denying his motion for a mistrial that was made in response to comments made by the prosecutor during closing argument. Appellant argues that the prosecutor commented on the fact that appellant had chosen to remain silent after his arrest and had not immediately offered his claim of self-defense and that such a comment is improper pursuant to Doyle v. Ohio
(1976), 426 U.S. 610. Appellant asserts further that the prosecutor's statement was inaccurate and deceptive because the defense had attempted at trial to offer evidence as to the issue of self-defense by having Attorney Alan Konop testify that appellant had phoned him on the night of the murder and had related his claim of self-defense at that time.
Appellee responds that the prosecutor's statement was not an improper comment on appellant's post-arrest silence but rather a challenge to the credibility of the self-defense claim, the first mention of which had not been made until appellant spoke to a reporter seventy-two days after the murder.
At trial, the defense called Attorney Konop, who testified that on the night of April 13, 1996, he received a phone call from appellant. Konop testified that as a result of their conversation, he advised appellant to turn himself in to the police and to refrain from making any statements. After this testimony, a bench discussion was held off the record.
During closing argument, the prosecutor made the following statement:
 "The defendant has to prove self-defense, each and every element. There are three parts. He has to prove all three. And the defendant has failed to do so. And in fact his only attempt at proving those elements of self-defense are through a self-serving statement given to a newspaper reporter. The statement given over the telephone some seventy-two days after the incident. Seventy-two days after the incident. Not April 13th, the night of the incident. Seventy-two days later he calls up Mr. Sallah from The Toledo Blade and gives him his side of the story."
At that point, the defense objected and a conference was held off the record. The issue of the prosecutor's comment was raised again after all closing arguments were made. At that time, the defense moved for a mistrial and the trial court found the motion not well-taken. After the motion was denied, the defense proffered additional testimony of Attorney Konop that would have been given along with his earlier testimony. Konop testified as to his phone conversation with appellant on the night of April 13, 1996. Konop stated that appellant told him he had encountered Stopera at a gas station that evening and that Stopera followed appellant as he left. Appellant told Konop that he continued driving and finally turned onto a side street which turned out to be a dead-end. Appellant told Konop that he stopped his car and Stopera pulled in behind him. The two men got out of their cars, Stopera reached into his pocket, and appellant, thinking that Stopera was going to draw a weapon, shot him.
"A motion for mistrial is addressed to the sound discretion of the trial court." State v. Saunders (1994), 98 Ohio App.3d 355,358 (citing State v. Glover (1988), 35 Ohio St.3d 18). Prosecutors are generally given a certain degree of latitude in their closing arguments. Id. at 359. "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith
(1984), 14 Ohio St.3d 13, 14.
In State v. Saunders, supra, this court considered whether the prosecutor's mention in closing argument of appellant's postarrest silence violated her right to due process and a fair trial. We stated that "[w]hen a defendant's postarrest silence is raised for the first time in the prosecutor's closing argument, it is not being raised for impeachment purposes and the defendant is further prejudiced in that he or she is afforded no opportunity to call rebuttal witnesses." Sanders, supra, at 359-360. This court went on to find the prosecutor's action to be a violation of due process. In this case, as in Saunders, the prosecutor's comment was made during closing argument, when appellant had no opportunity to call rebuttal witnesses. We find preliminarily that the prosecutor's reference to appellant's postarrest silence was improper and that pursuant to Doyle, supra, further analysis must be conducted. Saunders, supra, at 360.
In Doyle, the United States Supreme Court stated that "* * * it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle,supra, at syllabus. Doyle violations are reviewed under the harmless error standard, United States v. Newman (C.A. 9, 1991),943 F.2d 1155, 1158. In determining whether the prosecutor's conduct was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting appellant's guilt. Id.
Our review of the closing argument shows that the prosecutor's comment amounted to four sentences out of a closing argument that, when transcribed for this court's review, spanned fifteen pages. The comment therefore was but a very small segment of the entire closing argument. As to whether an inference of guilt from silence was stressed to the jury, we have reviewed the comment in question in the context of the entire closing argument and we do not believe that the prosecutor stressed to the jury that it should infer guilt solely from appellant's failure to raise the claim of self-defense immediately after arrest. The prosecutor's statement appears to this court to have been a comment on what the state perceived as a lack of evidence in support of the claim of self-defense. Finally, as to the third question, after a thorough review of the evidence presented at trial, we find that there was extensive evidence "suggesting appellant's guilt." We therefore conclude that the prosecutor's remarks in this case amounted to harmless error and, accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by ruling that Attorney Konop could not testify as to statements made by appellant regarding his claim of self-defense. Appellant states that he "* * * agrees that, as an abstract proposition, the evidence rules do not permit a criminal defendant to introduce his out-of-court exculpatory statements to prove that he is not guilty * * *" but states that "an exception akin to that in Evid.R. 801(D)(1)(b) should have applied."
In order for a hearsay statement to be admitted under Evid.R. 801(D)(1)(b), the declarant must be testifying at trial and subject to cross-examination. In this case, however, appellant did not testify at his trial and it is therefore clear that Evid.R. 801(D)(1)(b) does not apply. The statements which appellant hoped to enter into evidence were clearly hearsay and not admissible unless an exception were found. See e.g. In re Coy
(1993), 67 Ohio St.3d 215, 217-218; State v. Gatewood (1984),15 Ohio App.3d 14, 16. Accordingly, the trial court did not err by refusing to permit Attorney Konop to testify as to appellant's statements and appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the trial court erred by sealing the jury's first two verdicts at the close of deliberations on Friday, September 20, 1996, and keeping them until the jury reached verdicts on the remaining count on Monday, September 23. Appellant argues that the trial court's action improperly bifurcated the deliberation process and prevented the jurors from reevaluating the first two verdicts, which he describes as "tentative." Appellant further argues that the trial court should have returned all of the verdict forms to the jury when it continued its deliberations on Monday, September 23.
In State v. Jones (Oct. 24, 1984), Hamilton App. Nos. C-830935, C-840056 and B-8833849, unreported, the Court of Appeals for Hamilton County considered a claim that the trial court erred by ordering the publication of the verdict on one count when several other counts were still submitted for deliberation. The appeals court conceded that the practice of publishing one or more verdicts while the jury was still deliberating ought not to be condoned but found that the consequences of the trial court's actions did not require reversal of the judgment since the defendant had not been prejudiced thereby. The court suggested that it would have been preferable for the trial judge to seal the verdicts delivered to him and then publish all of the verdicts only when the jury agreed on and delivered its verdicts as to the remaining counts. This is exactly what the trial court did in the case before us. This court has carefully reviewed the record of proceedings in the trial court. There is no indication in the transcript of proceedings after the jury began its deliberations that the first two verdicts were "tentative," or is there an indication that any of the jurors were inclined to change those verdicts that had been retained by the court. The record shows that the trial court carefully explained to the jury on Friday afternoon that it was sealing all of the forms and that it would return the blank ones when the jury reconvened on Monday morning. The trial court did not publish the verdicts separately but waited until all of them were submitted to the court. Further, after all of the verdicts were read into the record, appellant asked the trial court to poll the jury. The trial court did so and each juror responded that the verdicts and signatures thereon were in fact their own.
Appellant appears to argue that he was prejudiced because the verdicts "wrongly taken from the jury" were those which found him guilty of murder and felonious assault. We find implausible the theory that if the verdicts had been given back to the jury it would have found him not guilty of murder and felonious assault due to a change of mind over the weekend. Upon consideration of the foregoing, this court finds that the trial court did not err by sealing the jury's first two verdicts and keeping them until the jury finished deliberating on the other count. Accordingly, appellant's third assignment of error is not well-taken.
On consideration, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.