Defendant-appellant Darnell Williams appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of murder with a firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 18, 1997, the Stark County Grand Jury indicted appellant on one count of murder with a firearm specification in connection with the shooting death of Juan Lemon on July 5, 1997. At his arraignment on December 5, 1997, appellant entered a plea of not guilty to the indictment. A jury trial commenced on January 26, 1998.
The following evidence was adduced at trial.
In 1995, appellant met Charles "Nate" Berry. Subsequently, Nate introduced appellant to Juan Lemon. After Nate was robbed in the summer of 1996, he terminated his friendship with appellant because he (Nate) and his friends, including Lemon, suspected appellant was responsible for the robbery.
Appellant testified Nate and his friends repeatedly harassed him as a result of their suspicion. Appellant recalled two specific confrontations with Lemon. The first incident occurred at Era Fisher's birthday party in March, 1997, during which Lemon and friend, Artis Rogers, approached appellant. Rogers allegedly told appellant, if he found out appellant had something to do with Nate's being robbed, "they was going to what they had to do to [appellant]." Transcript of the Proceedings, Vol. III, at 544. Lemon allegedly expounded, "We going to split your head up." Id. Thereafter, appellant asked Fisher to help him leave her home because he feared Lemon and Rogers would harm him.
The second incident occurred at a party in June, 1997, during which Lemon stared and made facial gestures at appellant and his girlfriend, Sheneva Williams. Lemon's behavior caused appellant to be concerned an incident might ensue. Williams believed Lemon was attempting to pick up her girlfriend, who was standing with appellant and her. Although Williams stated the looks made her feel uncomfortable, she did not find the gestures threatening. Tr., Vol. I, at 269.
Appellant also testified Lemon repeatedly drove his moped by appellant's apartment. Although appellant stated this behavior made him fear for his life, he admitted Lemon did not say or do anything to him on these occasions. Appellant further testified Nate and his friends were responsible for a brick being thrown through his apartment window, however, he admitted the police did not charge anyone as a result of the incident.
On July 5, 1997, over two hundred people gathered at the Thompson-Snodgrass Park in Alliance, Ohio, to watch a basketball tournament and enjoy the holiday weekend. At approximately 3:00 p.m. that day, appellant and Williams decided to take their child to the park to watch a friend play in the tournament. While appellant and Williams talked with friends, Nate, Lemon, and two other individuals drove by the group. Nate stopped the vehicle, and he and his passengers stared at appellant. Lemon uttered some inaudible words toward appellant. After Nate, Lemon, and the others drove away, appellant and Williams left the park to get something to eat. Fifteen minutes later, appellant and Williams returned to the park and resumed socializing with their friends. After a short time, Nate and his friend, Ernest Sampson, drove by appellant. As they drove by, Nate called appellant, "a holy ass nigger."
Thereafter, appellant decided to go to Sampson's house to speak with Nate in order to resolve the situation. Largentrius Johnson accompanied appellant. When appellant returned to the park approximately ten minutes later, he possessed a gun. According to appellant, Johnson gave him the gun, explaining, "Its better to be safe then [sic] sorry." After speaking briefly with his friends, appellant walked to the basketball courts.
At the basketball courts, appellant encountered Lemon; his cousin, Perez; and another individual. Perez testified appellant walked over to the three and asked Lemon, "What's up, you got some beef with me or something." Perez noticed appellant had a gun in his hand. As Lemon placed the cigar he was smoking on the ground, appellant asked, "What you reaching for." Tr., Vol. II, at 348. Immediately thereafter, appellant started shooting. He fired four or five shots, and then walked out of the park into an alley. Police and paramedics arrived at the scene. Paramedics transported Lemon to the hospital. At the hospital, emergency personnel discovered a .32 caliber handgun in the right front pocket of Lemon's pants.
After gathering evidence and interviewing witnesses, the police established appellant as a suspect. The police were unsuccessful in locating appellant, but eventually received tips indicating appellant had fled to Washington D.C. On August 29, 1997, the Alliance Police Department contacted the Federal Bureau of Investigation requesting assistance in apprehending appellant. On November 19, 1997, the FBI arrested appellant in Washington, D.C.
After hearing all the evidence and deliberations, the jury found appellant guilty of murder and the attendant firearm specification. The trial court sentenced appellant to a term of imprisonment of fifteen years to life on the murder charge and an actual term of incarceration of three years on the firearm specification.
It is from this conviction and sentence appellant prosecutes this appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN NOT ORDERING A MISTRIAL FOLLOWING IMPROPER CLOSING ARGUMENT BY THE PROSECUTION.
 II. THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL IN VIOLATION OF THIS SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 III. THE JURY VERDICT FINDING APPELLANT GUILTY OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Any other facts relevant to our discussion of appellant's assignments of error will be contained therein.
 I
In his first assignment of error, appellant maintains the trial court erred in failing to sua sponte order a mistrial following the prosecutors' improper statements during closing arguments. Specifically, appellant argues the prosecutors went beyond the facts of the case during summation.
Initially, we note appellant's trial counsel neither objected to any of the statements made during closing arguments nor moved for a mistrial at the conclusion of the State's summation. To the extent a complained instance was not objected to, this Court is limited to a plain error review pursuant to Crim. R. 52(B).
In order for an un-objected to comment during closing argument to rise to the level of plain error under Crim. R. 52(B), it must appear on the face of the record not only the error was committed, but also, except for the error, the results of the trial clearly would have been otherwise.State v. Underwood (1983), 3 Ohio St.3d 12, paragraph 2 of the syllabus, citing State v. Long (1978), 53 Ohio St.2d 91, paragraph 2 of the syllabus. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v.Long, supra, at paragraph 3 of the syllabus.
"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Saunders (1994), 98 Ohio App.3d 355, 359, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14. A prosecutor's conduct during trial cannot be grounds for error unless such conduct deprives the defendant of a fair trial.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. Not every comment by a prosecutors during closing arguments can be a basis for reversal of a conviction. State v. Frazier (1995),73 Ohio St.3d 323, 341.
Appellant challenges two particular statements made by the prosecutor during closing arguments. During the initial portion of the closing argument, Assistant Prosecutor McGinnis stated:
 I mean think about the killing spree that would just be opened up if I just decided for whatever reason I don't like you and I can just go, get myself a gun, make sure it's loaded and ready and I can approach you, and then say at some point, well, you know, he turned around funny or did something, so I had to blow him away. I mean it doesn't make sense. That's not what self-defense means.
Tr., Vol. III, at 608-609.
Thereafter, appellant's trial counsel argued:
 We know that Juan was a man who lived by a motto of do you want to ride or die, which is evidenced by the tattoo that he proudly displayed on his forearm. We know that he had a loaded gun in his pocket, that according to [Perez] wasn't an uncommon occurrence.
 When you carry around one of these and you brandish one of these and you play it big with one of these, sometimes this happens.
 Id. at 620.
During rebuttal, Assistant Prosecutor Hartnett responded:
 Is this just another case of another young dead black male in the streets of America and we're supposed to say that it's the life-style he chose for himself and ignore the real facts of this case? I hope not, because then you're going to leave [sic] him walk out of here and let him get away with murder. We can't allow that.
 Id. at 623.
We shall review each of the statements in turn.
As to the first challenged statement, we find the remarks were not improper. Although the prosecutor personalized his argument with the use of the pronoun "I", the prosecutor was not vouching for the credibility of any of the State's witnesses. Additionally, although the remarks are argumentative, the prosecutor did not argue beyond the facts of the case. Prosecutors are generally give a certain degree of latitude in their closing arguments. State v. Smith, supra. A closing argument must be reviewed in its entirety to determine whether the prosecutor's remarks were prejudicial. State v.Moritz (1989), 63 Ohio St.2d 150, 157. Additionally, upon review of the prosecutors' entire closing argument, we find no prejudice to appellant.
With respect to the second challenged statement, we find defense counsel invited the statement by the comments he made during her closing argument. In her closing argument, defense counsel implied being shot was a possible and natural consequence of carrying a weapon. The rule of "invited error" prohibits a party who induces error in the trial court from taking advantage of such error on appeal. State v. Woodruff
(1983), 10 Ohio App.3d 326, 327. We find the prosecutor's rebuttal was a strong response to defense counsel's "that's life" attitude. As such, we find the prosecutor's statement was invited and not improper.[1]
Because the statements made by the prosecutors during closing arguments were not improper, we find said statements do not rise to the level of plain error effecting the outcome of the trial. Accordingly, we find the trial court did not err in notsua sponte ordering a mistrial.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant raises an ineffective assistance of counsel claim. Appellant asserts his trial counsel was ineffective in failing to object to the testimony of FBI Agent Michael McInterney and to the prosecutors' improper remarks during summation.
A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to the appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
Appellant's trial counsel filed a motion in limine seeking to exclude any testimony regarding the actions taken by authorities to locate appellant in Washington, D.C. The trial court ordered the prosecutor not to include details of Washington, D.C. in his opening statement. The trial court continued, "Before [Agent McInerney] testifies, if you want, we can do a little quick hearing outside of the jury as to what those details are. Some of them may be appropriate, some of them may not. Maybe all of them are appropriate. I don't know until I hear what those are going to be." Tr., Vol. I, at 15.
Appellant's trial counsel did not request a hearing outside of the jury or object when the State called Agent McInerney. The agent testified regarding his efforts to locate appellant. At the conclusion of the State's examination of the witness, defense counsel moved to strike the entire testimony and requested the court instruct the jury to disregard it. The trial court found the testimony relevant to the issue of flight and concluded the evidence was not prejudicial to appellant.
Upon review of the trial court's ruling relative to appellant's motion in limine, we find the trial court prohibited the State from going into the details of the witness' attempts to locate appellant only during opening statements. The trial court did not exclude the evidence from admission, but indicated it could not determine whether the evidence was appropriate until it heard the details. Upon hearing the testimony, the trial court found the evidence to be relevant. Upon review of McInerney's testimony, we agree with the trial court. Because the testimony is relevant, any objection by defense counsel would have been overruled. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91,95. Accordingly, we find appellant's trial counsel's performance did not fall below an objective standard of reasonable representation. As such, appellant's cannot satisfy the first prong of the Strickland test.
We now turn to appellant's claim trial counsel's failure to object to the prosecutors' inappropriate remarks during closing arguments. For the reasons set forth in Assignment No. I,supra, we find trial counsel's failure to object to the State's summation did not render her representation ineffective.
Appellant's second assignment of error is overruled.
 III
Appellant's third assignment of error sets forth a manifest weight claim.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph 1 of the syllabus.
The crux of appellant's argument is the testimony adduced at trial supports his claim he shot Lemon in self-dense.
Under Ohio law, self-defense is an affirmative defense.State v. Williford (1990), 49 Ohio St.3d 247, 249 (Citations omitted). In order to prevail on a claim of self-defense, a defendant must establish, by a preponderance of the evidence: (1) he was not at fault creating the situation giving rise to the affray; (2) he had a bonafide belief he was in imminent danger of death or great bodily harm; (3) his only means of escape from such danger was in the use of force; and (4) he must not have violated any duty to retreat or avoid the danger.Id. (Citation omitted).
The evidence presented at trial established, prior to the murder, appellant and Lemon had a strained relationship. Lemon apparently believed appellant was responsible for the robbery of Charles "Nate" Berry. In order to establish his mind set on July 5, 1997, appellant described two confrontations with Lemon, prior to the shooting, which caused appellant to feel threatened by Lemon. The first incident occurred at Era Fisher's birthday party in March, 1997. Appellant testified Lemon and Rogers threatened to shoot him in the head if they learned appellant was responsible for Nate's being robbed. Fisher testified both appellant and Lemon attended her party. Although she knew an argument had ensued between Lemon and. appellant, Fisher admitted she did not witness the disagreement. Fisher explained she helped appellant leave the party after he told her he feared Lemon and his friends were going to do something to him.
The second incident occurred at a party in June, 1997. Appellant testified Lemon walked over to where appellant and his friends were gathered and made facial gestures at him. Tyla Cundiff and Sophia Curtis, who were also guests at the party, observed Lemon staring and laughing at appellant. Both women testified they did not witness any type of altercation between appellant and Lemon at that time.
Appellant also testified Lemon repeatedly drove his moped by appellant's apartment. Appellant explained he felt Lemon was threatening his life. Appellant further testified Lemon and Nate threw a brick through his bedroom window. Sheneva Williams corroborated appellant's testimony regarding Lemon's driving by the apartment and the broken window. She also stated she believed Lemon and Nate were responsible for the window.
The State presented eye witnesses to the shooting and the events of July 5, 1997, leading up to the shooting. Perez Lemon testified appellant, armed with a .380 caliber handgun, approached Lemon and his friends on July 5, 1997. Perez heard appellant holler, "What's up, you got some beef with me or something!" Thereupon, appellant began shooting. Appellant fired four or five shots at the victim, and then walked away.
Dr. Robert Ruiz, the deputy coroner of Stark County, testified based upon his autopsy, Lemon was facing whomever attacked him and had tried to shield himself from the bullets. Dr. Ruiz also testified he found no evidence Lemon was shot at close range, which would be a distance of less than one foot.
Although the evidence revealed the relationship between appellant and Lemon was tenuous at best, the testimony of numerous witnesses provided a basis for the jury's rejecting appellant's claim he felt in imminent danger of death or great bodily harm on July 5, 1997, which resulted in his use of deadly force. The trier of fact was free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. The jury was presented with sufficient evidence from which it could find appellant did not prove the affirmative defense of self-defense by a preponderance of the evidence.
Upon our review of the entire record, we find the jury did not clearly lose its way so as to result in a manifest miscarriage of justice. We do not disagree with the jury's resolution of the testimony.
Appellant's third assignment of error is overruled.
The conviction and sentence of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur
--------------------
--------------------
 -------------------- JUDGES
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
--------------------
--------------------
 -------------------- JUDGES
[1] We hasten to note, if the prosecutor's comment was not "invited", we would find it improper, but insufficient to warrant reversal under the plain error doctrine.