OPINION
Defendant-appellant, Wally L. Frederick, appeals his conviction in the Clermont County Court of Common Pleas for assault.
Appellant was indicted on February 11, 1998 on one count of assault in violation of R.C. 2903.13(A). The charge stemmed from an incident that occurred on January 21, 1998, wherein appellant, an inmate at the Clermont County Jail, allegedly struck Corrections Officer Mike McConnell on the forehead with a toothbrush. At the time of the incident, appellant was serving a thirty-day sentence for failure to pay child support.
By entry filed February 23, 1998, the trial court granted appellant's motion to change his original not guilty plea to a plea of not guilty by reason of insanity. A bench trial was subsequently held on July 29 and 30, 1998. By entry filed August 24, 1998, the trial court found appellant guilty as charged. On September 8, 1998, appellant filed a motion for a new trial pursuant to Crim.R. 33. By entry filed October 19, 1998, the trial court summarily denied appellant's motion. Appellant was subsequently sentenced to five years of community control.
Appellant timely filed this appeal and raises the following two assignments of error, which will be addressed in reverse order:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY IN [SIC] FAILING TO FIND THAT THE DEFENDANT-APPELLANT HAD MET THE LEGAL DEFINITION [SIC] OF INSANITY AT THE TIME OF THE ALLEGED COMMISSION OF THE OFFENSE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN OVERRULING THE MOTION FOR A NEW TRIAL BY THE DEFENDANT-APPELLANT WHEN THE EVIDENCE CLEARLY SHOWED THAT THE BURDEN HAD BEEN MET.
In his second assignment of error, appellant argues the trial court erred by overruling his motion for a new trial. In his motion, appellant argued a new trial was warranted as a result of prosecutorial misconduct and newly discovered evidence as follows: (1) the affidavit of Patty Howser, an administrative assistant for the Public Defender's Office, who witnessed the assault, "would refute [nurse Theresa Singleton's] testimony that [appellant] knew what he was doing and stated he only struck the officer to go to the hospital[;]" (2) neither Singleton's foregoing statements nor her name were revealed to appellant despite his "Demand For Discovery" and "the statements could not have been reasonably discovered otherwise[;]" and (3) medical records were "altered by medical personal [sic], jail personal [sic], or the prosecutors office[,] [t]hus constituting misconduct under Crim.R. 33(A)(2)."
Crim.R. 33 provides in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
* * *
 (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given * * *.
Under Crim.R. 33, motions for new trial are not to be granted lightly. Toledo v. Stuart (1983), 11 Ohio App.3d 292, 293. The granting or denial of a motion for a new trial pursuant to Crim.R. 33 is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v.Saunders (1994), 98 Ohio App.3d 355.
At trial, Singleton, a licensed practical nurse at the Clermont County Jail, testified that following the assault, appellant was both very angry and very apologetic and that he stated "he didn't want to be there and he thought that that was a way to go to the hospital." In finding appellant guilty, the trial court stated the following:
 And but for the rebuttal witnesses today, I think that the * * * State has failed to rise to the level of proving the culpability of knowing. And the real problem that I have * * * is the immediate statements of [appellant] after the incident in which he expressed remorse and apologized, which basically is the classic defense to the defense of insanity. * * * but, again, his motivation, explaining it to Nurse Singleton of what he was doing explains the actions at that time as one which was — that he is aware of what he was doing and awareness of the probability of his actions. * * *
 So, * * * I must weigh the credibility of Nurse Singleton, because I think Nurse Singleton directly refutes, and she was there * * *. I find nothing to impeach her at this point. So, I'm going to have to accept her testimony at this time.
Howser's affidavit, as attached to appellant's motion for a new trial, stated in pertinent part that "the Medical Department was called to check [appellant]; that every question he was asked, he answered; `I don't know.'; that never once did [appellant] tell the nurse that his actions were so he could go to the hospital; and that the nurse told [appellant] that when he started acting like he wanted help, he would get it."
The record shows that prior to being placed in Clermont County Jail, appellant was taking, and had been taking for several years, the medication Xanax. Xanax is a Schedule IV controlled substance recommended for "the management of anxiety disorder * * * or the treatment of panic disorder * * *." Physician's Desk Reference (53 Ed. 1999) 2517. The Physician's Desk Reference ("PDR") states that the risk of psychological dependence upon Xanax is increased in patients with a history of alcohol or drug abuse. Id. at 2520. Appellant has a history of alcohol abuse which is now in remission. The PDR also warns that Xanax must be withdrawn from the body gradually. Id. at 2519.
At trial, Singleton testified that it was jail policy to not dispense Xanax in the jail facility. Singleton testified that as a result, Xanax was totally withdrawn from appellant, who was instead placed on Ativan as part of his detoxification from Xanax. Ativan is recommended for "the management of anxiety disorders * * * or anxiety associated with depressive symptoms." Id. at 3271. The PDR warns that withdrawal symptoms have occurred following abrupt discontinuance of Ativan. Id. The PDR further warns that addiction-prone individuals such as alcoholics should be under careful surveillance when taking Ativan because of the predisposition of such patients to habituation and dependence.Id.
At issue in the case at bar was whether appellant had received Ativan on January 19 and 20, 1998, that is, on the two days preceding the day of the assault. At trial, Singleton testified that on those two days, appellant had refused his evening doses of Ativan. When asked by trial counsel whether such refusals were recorded on appellant's medication chart, Singleton replied that they were on the original chart but that it had not come through on the copy of the chart used at trial (Defendant's exhibit 1) because the refusals had been recorded in red ink. Defendant's exhibit 1 shows two blank spots for the evening doses of Ativan on January 19 and 20, 1998, as well as three blank spots for the midday doses of Ativan on January 18, 19, and 20, 1998.
At that point in the trial, the prosecutor asked to approach the bench. Following a bench conference, the prosecutor stated on the record that she had gone to the jail, "had them go through the records," and that "[the refusals were] in the original, but the red ink didn't come through. The red ink doesn't copy." The record indicates that while the prosecutor was aware of the discrepancies between Defendant's exhibit 1 and the original chart at the very least on the second day of the trial, trial counsel was not aware of the discrepancies until Singleton's testimony on rebuttal and the prosecutor's subsequent statement on the record (both on the second day of the trial as well). When asked by the trial court whether he wished to have the original records, trial counsel stated that what had been admitted at trial was fine.
In an affidavit attached to appellant's motion for a new trial, trial counsel stated the following:
 1. The medical records of [appellant] were sent directly to me from the medical personal at the Clermont County Jail toward the end of March of 1998 after my request in February of 1998.
 2. The medical records which were sent to me indicated [appellant] was not given his medications properly: The medication "Ativan" was not given properly on January 16th, 19th, and 20th. The missing of the medications was critical to [appellant's] defense.
 3. The medical records were stipulated as accurate on or about May 13th, 1998, after a motion was filed by [appellant].
 4. I saw the copies of medical records that Maura Teague, the prosecutor had on the first day of [appellant's] trial. These records also indicated [appellant] had not received his medications.
 5. The R.N. supervisor informed me that after the first day of trial which was on or about the 29th day of July, 1998, Maura Teague further inspected the medical records of [appellant]. Upon Maura Teagues investigation she found that the medical records now indicated that the medications were given on January 19th and 20th of 1998.
 6. Maura Teague on or about July 30th, 1998, showed the medical records the Court who was the trier of fact. She explained that the copier did not copy properly because the medication was written in red.
 7. On September 3rd, 1998 I looked at the original medical records at the Clermont County Jail. Upon inspection of such I found many of the dates were recorded in red and that all of them showed up on my copies except the dates on which the medication was improperly given.
 8. Suspecting the records had been changed I had two copies of the page in question copied two times on the same copier which the R.N. supervisor informed had copied the medical records before. Both copies now showed the medication being given and all other parts of the record appeared the same.
 9. On September 3rd I called many experts on copies and or copy machines and or copiers and was informed that if the copier could not copy a color that would be rare and that the problem would or should be consistent with the copier. However, if a copier had a problem with a color that it would usually show a trace or ghost like image of the thing being copied.
 10. The medications which now are shown as given on the 19th and 20th of January have been initialed by a different nurse than the nurse that initialed the other medications that were given on those days. None of the other days medications that were given to [appellant] show such a inconsistency of different nurses given medications on those days. [sic]
On September 21, 1998, a hearing was conducted on appellant's motion for a new trial. Diane Miglio, the Clermont County Jail Medical Administrator in charge of the medical records there, testified that appellant's original medication chart (Defendant's exhibit 2) showed appellant's refusal to take his evening doses of Ativan on January 19 and 20, 1998. Miglio testified that the copy of the chart used at trial, which did not show the alleged refusals, did not match the original chart because the red ink "did not come through on Xerox." Miglio acknowledged, however, that the alleged refusals were the only marks in red ink that had not come through. Miglio also acknowledged that the sets of copies she had provided trial counsel and the prosecutor before the trial did not show the refusals.
On cross-examination, Miglio testified that the prosecutor came to the jail in April or May 1998, several months before the trial, to review the records. Miglio testified that in the process of reviewing the records, both she and the prosecutor noticed the discrepancies between the original chart and the copy ultimately used at trial. Miglio also stated that early September 1998, after the trial, trial counsel came to the jail to get copies of the original chart. Defendant's exhibit 3, one of the copies of the original chart made by trial counsel after the trial, shows all the marks in red ink that were in the original chart, including appellant's alleged refusal to take his evening doses of Ativan on January 19 and 20, 1998. Defendant's exhibit 3 was made on the same photocopier used to make the copies used at trial.
After thoroughly reviewing the record, we find that the trial court did not err in denying appellant's motion for a new trial for the following reasons:
 Before a new trial can be granted on the basis of newly discovered evidence, the defendant must show that "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro
(1947), 148 Ohio St. 505, syllabus.
The record shows that the trial court expressly relied on Singleton's testimony in finding that appellant was not insane at the time of the assault. Singleton testified that following the assault, appellant told her he did not want to be in jail and that he thought the incident was a way to go to the hospital. By contrast, the affidavit of Howser, who was present at the time of the assault, states that "never once did [appellant] tell the nurse that his actions were so he could go to the hospital * * *."
It is well-established that newly discovered evidence which merely impeaches or contradicts other evidence is not enough to warrant the granting of a new trial. Petro at syllabus. Howser's affidavit does nothing more than simply impeach or contradict Singleton's testimony. As a result, it did not warrant the granting of a new trial. In addition, because the trial court was the trier of fact in the underlying case, it had the opportunity to consider whether the affidavit would have altered its decision. Confronted with conflicting testimony on the issue of whether appellant assaulted the officer to go to the hospital, the trial court was evidently inclined to believe Singleton's testimony. Such decision was within the trial court's province.
Appellant also contends that the affidavit of trial counsel and the witnesses' testimony at the hearing on the motion for new trial raise serious questions as to whether appellant's medication chart which recorded his alleged refusals was tampered with or altered by the prosecution. The standard of review regarding a claim of prosecutorial misconduct based upon failure to disclose evidence is whether the nondisclosure was material to the finding of guilt based upon the totality of the record, and whether there is a reasonable likelihood that the undisclosed material would have affected the guilty verdict. State v. Kitzler (Feb. 1, 1996), 1996 Ohio App. LEXIS 327, at *5, Cuyahoga App. No. 69076, unreported, citing State v. Johnston (1988), 39 Ohio St.3d 48.
Initially, we question the prosecutor's conduct in apparently not informing trial counsel about the discrepancies between the original chart and the copy of the chart used at trial. The record indicates that the prosecutor discovered the discrepancies several months before the trial. Yet, the record shows that trial counsel found out about them at the same time the trial judge did, during Singleton's testimony on rebuttal. Crim.R. 16(D) provides that
 If, subsequent to compliance with a request or order pursuant to this rule, and prior to or during trial, a party discovers additional matter which would have been subject to discovery or inspection under the original request or order, he shall promptly make such matter available for discovery or inspection, or notify the other party or his attorney or the court of the existence of the additional matter, in order to allow the court to modify its previous order, or to allow the other party to make an appropriate request for additional discovery or inspection.
We find that the prosecutor's failure to notify trial counsel violated Crim.R. 16(D) and thus constituted misconduct. We find, however, that such prosecutorial misconduct did not warrant a new trial under Crim.R. 33(A)(2).
In order to grant a motion for a new trial pursuant to Crim.R. 33(A)(2), any misconduct by a prosecuting attorney must materially affect the rights of the defendant at trial. Crim.R. 33. Appellant attempted to prove at trial that he was not guilty by reason of insanity. A key issue was whether appellant had received his required dose of Ativan on the two days preceding the assault. Whether appellant's medication chart was blank, indicating no dosage, or was altered to subsequently indicate an "R" for refusal, it was clear at trial that appellant had not received his dose of Ativan on those two days. Whether the Ativan was refused or not administered, appellant's mental state at the time of the assault logically would have been the same. As a result, we fail to see how the discrepancies between appellant's original medication chart and the copy of the chart used at trial materially affected appellant's rights at trial or prejudiced the trial court's consideration of his mental state.
In light of all of the foregoing, we find that the trial court's decision to deny appellant's motion for a new trial was not so arbitrary, unconscionable or unreasonable as to constitute an abuse of discretion. Appellant's second assignment of error is overruled.
In his first assignment of error, appellant argues that the trial court erred in failing to find he had met the legal definition of insanity at the time of the assault.
The plea of not guilty by reason of insanity is an affirmative defense which must be proved by a preponderance of the evidence. State v. Brown (1983), 5 Ohio St.3d 133, 134. A person is not guilty by reason of insanity only if he proves "that at the time of the commission of the offense, [he] did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts." R.C. 2901.01(A)(14). "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of fact." State v. Thomas (1982),70 Ohio St.2d 79, 80. "A trial court's judgment as to insanity will only be reversed where overwhelming and uncontradicted evidence leads to a contrary conclusion." State v. Owens (May 10, 1999), Madison App. No. CA98-05-022, unreported, at 10-11, citing Statev. Brown (1983), 5 Ohio St.3d 133.
The record shows that following his abrupt incarceration on or about January 15, 1998, appellant was very confused for the first two weeks and was frightened of the guards. Appellant's wife testified at trial that appellant has been afraid of the police for a long time, that this fear is heightened when he does not have his anxiety medication, and that the first week he was in jail, appellant told her the police were going to kill him. The record shows that appellant has a history of being depressed associated with anxiety, as well as a history of outpatient psychological treatment with a psychologist.
At trial, Singleton testified that when she brought appellant his medication on the morning of the assault, appellant was very calm and oriented. As already noted, Singleton also testified that following the assault, appellant was both very angry and very apologetic and that he stated "he didn't want to be there and he thought that that was a way to go to the hospital."
James McGinnis, a therapist at the Clermont County Jail, initially met with appellant on the day of the assault for an intake summary. McGinnis testified that at that time appellant "was very nervous and very upset, but it was more of a situational response to being in jail." McGinnis met with appellant again shortly after the assault. McGinnis testified that appellant was then agitated, remorseful, and apologetic. Appellant repeatedly told McGinnis that "he was not able to deal with being in jail and wanted to be taken to a hospital." McGinnis opined that appellant "was being manipulative and thought that by causing a severe outburst that we would respond by transferring him over to * * * [a] medical institution, and I think that's what his goal was. Once * * * we * * * made it clear to him that the suicide attempt and the behavior was [sic] going to warrant him being leveled [more closely supervised or controlled], he immediately calmed down, became very apologetic and was not a problem afterwards."
Gail Hellmann, M.D., a staff psychiatrist with the Community Diagnostic and Treatment Center in Cincinnati, concluded in a report that, in her expert opinion, at the time of the assault, appellant was "suffering from a severe mental disease which rendered him unable to know the wrongfulness of his actions." However, Paul A. Deardoff, Ph.D., a clinical psychologist with Hyde Park Psychological Services in the Greater Cincinnati area, concluded in a report that, in his expert opinion, the information about and provided by appellant during the psychological evaluation was insufficient to state "with a reasonable degree of psychological certainty" that appellant was legally insane at the time of the assault.
In light of the foregoing, we find that the trial court did not err in finding appellant had not met his burden of proof on the not guilty by reason of insanity plea. Appellant's first assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.