DECISION.
{¶ 1} Defendant-appellant Marlin Thomas appeals the judgment of the Hamilton County Court of Common Pleas convicting him, following a jury trial, of four counts of aggravated robbery with accompanying firearm specifications, three counts of felonious assault with accompanying firearm specifications, having a weapon under a disability, and receiving stolen property. The trial court sentenced Thomas to a total of forty-five and one-half years in prison. Thomas now brings forth nine assignments of error for our review. For the following reasons, we affirm.
{¶ 2} The facts in this case reveal a vicious crime spree that occurred on December 25, 2000, and resulted in injuries to four victims. At 8:00 p.m. on Christmas night, two masked men exited from a van in the West End neighborhood of Cincinnati, robbed Antwan Davis, and then shot Davis in the back of the leg as he attempted to escape. Forty-five minutes later, in the Northside neighborhood of Cincinnati, two masked men alighted from a van and stole Steven Uhlenbergher's wallet and Mary Burnett's purse. One of the perpetrators pistol-whipped Burnett and shot her in the arm. As the two men were fleeing from the scene in their van, they sped past a police cruiser. The police officers pursued the van, and, during this pursuit, the officers witnessed the van crash into a car driven by Anthony Jones. Jones was injured in this accident. Thomas was also injured and was found inside the upturned van in the driver's seat, unconscious, with a gun beneath him.[1]
{¶ 3} Criminologist William Schrand testified at trial that the shell casing found near Burnett, who had been shot in the arm, was fired from the gun found underneath Thomas. The results of a gun-residue test submitted at trial showed that Thomas had traces of gunpowder on his right hand. While there was some testimony that Thomas could have obtained gunpowder on his hands by shaking someone else's hand, there was also testimony that the gunpowder found on Thomas was consistent with someone who had fired a handgun.
{¶ 4} Davis, the first victim, testified that one of his perpetrators was wearing a plaid coat. Two coats, one plaid and one black, were found in the van, as well as the wallet of the second victim, Uhlenberger. Davis further identified the van that Thomas was apprehended in as the same van from which his attackers had emerged.
{¶ 5} At trial, Thomas testified in his defense that he did not have any knowledge about the assaults and robberies because he was asleep in the back of the van. Thomas testified that when he was leaving a bar in the West End, he saw his friend "Keno" driving a van. He paid Keno to take him home. When Thomas entered the van, he testified that there were two other passengers whom he did not recognize. Thomas smoked marijuana with these passengers and then fell asleep in the back of the van. Thomas testified that he awoke as the van stopped and the two passengers re-entered it. Shortly after this, the van stopped again and Watson, the van's fifth passenger according to Thomas, entered. At some point after this, a police cruiser began following the van. Thomas testified that, during the ensuing high-speed chase, he demanded that Keno stop and let him out.
{¶ 6} The jury chose not to believe Thomas's account and found him guilty on twelve of the fifteen counts upon which he had been indicted. Thomas now asserts that the trial court made nine errors, which we address in the order that they allegedly occurred in the proceedings below.
{¶ 7} In his fifth assignment of error, Thomas maintains that the trial court erred in overruling his objections to the state's use of two preemptory challenges to exclude African-American men from the jury.[2]
Because the state offered race-neutral explanations for removing these two men from the jury, we overrule this assignment of error.[3] The state removed the first prospective juror because he had previously been convicted of theft, a crime of dishonesty. The state removed the second prospective juror because of his hypertechnicality. That juror had expressed concern that when the court asked "folks to tell the truth, so help you God," "[t]he court never asked the people if they believe in God." The state explained that since it would be basing its case against Thomas on circumstantial evidence, this juror might hold the state to a higher standard of proof. These race-neutral explanations were sufficient to defeat a Batson challenge, and, accordingly, the fifth assignment of error is without merit.
{¶ 8} In his sixth assignment of error, Thomas asserts that the trial court erred in sustaining the prosecution's objection to the following question posed by defense counsel to Antwan Davis, the victim of the West End robbery and assault: "But apparently you didn't tell police about [the plaid jacket], because they don't have it in their dispatch note; that right?" Thomas argues that this question was appropriate because he was trying to show the jury that Davis's recollection at trial about a plaid coat worn by one of his attackers was really the result of police suggestion. But the objection was sustained only as to the form of the question. Defense counsel rephrased the question as "[W]hat did you tell the police at the time?" Davis then answered. Because defense counsel was able to rephrase the question and to have it answered, no material prejudice arose from the trial court's ruling.[4] Accordingly, the trial court did not abuse its discretion in sustaining the objection, and, thus, the sixth assignment of error is without merit.
{¶ 9} In his third assignment of error, Thomas asserts that he was deprived of a fair trial when the assistant prosecutor, in closing argument, commented on the fact that Thomas had chosen to remain silent after his arrest and had not immediately proclaimed his innocence, telling the police the story repeated at trial about how he had fallen asleep in Keno's van.[5] Thomas argues that this comment was improper pursuant to Doyle v. Ohio.[6] In Doyle, the Supreme Court held that it is "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."[7]
{¶ 10} During closing argument, the assistant prosecutor referred to the testimony of Police Officer Will Robbins. Officer Robbins had accompanied the Northside victims to the hospital to complete his investigation. While at the hospital, he saw Thomas, who had already been read his rights. Robbins knew Thomas personally and, upon seeing him at the hospital, had told him that his father was going to be angry with him. Robbins testified that Thomas had responded by saying that he was not worried about his father, but was instead concerned about his mother's reaction. In closing argument, the prosecutor commented on Thomas's failure to proclaim his innocence by stating, "When he's laying in the hospital under arrest for these terrible crimes, shooting of an 83 year old lady on Christmas night, he doesn't say, God, you got it all wrong. I was in the car with Keno and these two guys, I don't know who they are, but they got in the car. Gosh, I shook the one guy's hand."
{¶ 11} "He didn't say that. What does he say? My mom's going to kill me. [Defense counsel] says, oh, that doesn't mean anything. Well, yeah, it does. By itself, maybe not. But with all of this evidence, it sure does."
{¶ 12} In State v. Saunders,[8] the Sixth Appellate District held that "[w]hen a defendant's post-arrest silence is raised for the first time in the prosecutor's closing argument, it is not being raised for impeachment purposes, and the defendant is further prejudiced in that he or she is afforded no opportunity to call rebuttal witnesses."[9]
Here, the challenge to Thomas's silence after he was arrested came only in closing argument. Accordingly, we are convinced that the prosecutor's reference to Thomas's post-arrest silence was improper and that, pursuant to Doyle, further analysis must be conducted.[10]
{¶ 13} Doyle violations are reviewed under a harmless-error standard.[11] In determining whether the prosecutor's conduct was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting Thomas's guilt.[12] Our review of the record demonstrates that the prosecutor's improper comments were only a small portion of the closing argument. They were no more than several lines of an argument that, when transcribed for our review, spanned over thirty pages. In regard to the second factor, it is our view that, in the context of the entire closing argument, an inference of guilt was notstressed to the jury. In fact, during the prosecutor's comments, he stated that the silence, "by itself," was not indicative of guilt. Finally, with respect to the third factor, our review of the record demonstrates that the evidence of guilt presented at trial was overwhelming. We therefore conclude that the prosecutor's remarks in this case amounted to harmless error, and, accordingly, Thomas's third assignment of error is overruled.
{¶ 14} In his first, fourth and eighth assignments of error, Thomas contends that his convictions for two counts of aggravated robbery and one count of felonious assault in the Davis incident in the West End, and for one count of receiving a stolen firearm and all the additional counts with respect to the remaining three victims were not supported by sufficient evidence and, thus, that the trial court erred in denying his Crim.R. 29 motions for a judgment of acquittal or, in the alternative, his motion for new trial pursuant to Crim.R. 33(A)(4). Moreover, within these assignments, Thomas argues that the jury's verdicts were against the manifest weight of the evidence. We disagree.
{¶ 15} In reviewing a challenge to the trial court's denial of a Crim.R. 29(A) motion, an appellate court is required to determine whether the evidence "[wa]s such that reasonable minds [could have] reach[ed] different conclusions" as to whether the state had proved each material element of the offense beyond a reasonable doubt.[13] "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt."[14]
{¶ 16} Pursuant to Crim.R.33(A)(4), a new trial may be granted when "the verdict is not sustained by sufficient evidence or is contrary to law." Thus, the Crim.R. 29 and Crim.R.33(A)(4) motions here are reviewed under the same standard: whether a rational factfinder, viewing the evidence in a light most favorable to the prosecution, could have found that the essential elements of the crimes were proven beyond a reasonable doubt. Also, under this review, we are mindful that the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact.[15] We also recognize that the jury is the fundamental judge of the credibility of witnesses; it may believe or disbelieve any witness or accept part of what a witness says and reject the rest.[16]
{¶ 17} With respect to the felonious assault and aggravated-robbery charges involving Davis, Thomas argues that the evidence presented by the state was circumstantial and did not sufficiently support the inference that Thomas had committed the crimes with the requisite intent. The elements of an offense may be established by direct evidence, circumstantial evidence, or both.[17]
Circumstantial and direct evidence are of equal probative value.[18]
When reviewing the value of circumstantial evidence, we note that "the weight accorded an inference is fact-dependent and can be disregarded as speculative only if reasonable minds can come to the conclusion that the inference is not supported by the evidence."[19]
{¶ 18} With these principles in mind, we are persuaded that in the case sub judice the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that Thomas had committed the offenses of aggravated robbery and felonious assault against Davis. To support a conviction for aggravated robbery in violation of R.C.2911.01(A)(1), the evidence must have shown that Thomas, in attempting to commit a theft offense, had a deadly weapon on his person or under his control. To support a conviction for felonious assault under R.C.2903.11(A)(2), the evidence must have shown that Thomas knowingly caused or attempted to cause physical harm to Davis by means of a deadly weapon.
{¶ 19} Thomas claims that the circumstantial evidence presented at trial only allowed the jury to infer that Thomas was present at the West End robberies, not that he had participated in them. Thus, the jury could not have properly inferred that Thomas had knowingly inflicted or attempted to inflict physical harm on Davis. We disagree. Davis testified not only that the van Thomas was found in was the same van that his robbers had emerged from, but that his robbers had been wearing plaid and black coats, which were found in the van. Additionally, Davis testified that both of the robbers had guns and that one of the robbers had pointed the gun at his head and had fired, but that the gun had not discharged. That is when Davis escaped. As he was running away, Davis testified, the other robber shot him in the back of the leg.
{¶ 20} From such evidence, a jury could have reasonably and properly inferred that Thomas had participated in the West End robbery. Consequently, we disagree with Thomas that insufficient evidence existed to establish, beyond a reasonable doubt, that he had committed the offenses of aggravated robbery and felonious assault.
{¶ 21} With respect to the conviction for receiving a stolen firearm in violation of R.C. 2913.51(A), the state had to prove that Thomas had received or retained the property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. Here, there was no dispute that the gun was stolen. There was also sufficient evidence to show that Thomas had received or retained the gun, despite the fact that there were no fingerprints on the gun. Thomas had gunpowder on his hand, and the gun was found beneath him in the van.
{¶ 22} Thomas nonetheless asserts that there was insufficient evidence to show that he knew or had reasonable cause to believe that the handgun had been stolen. When determining whether a defendant had knowledge that property in his or her possession had been stolen, appellate courts look to the following factors: "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise."[20]
{¶ 23} Here, the first two factors supported the conclusion that Thomas should have reasonably known that the gun was stolen. Thomas explained his possession of the gun by asserting that he had landed on the gun when the van had crashed and rolled over. He also asserted that the gunpowder on his hands was from shaking the hand of one of the other passengers. But other evidence showed that the traces of gunpowder on his hand could have been from firing a gun. Furthermore, the third factor buttressed the case against Thomas. The gun was, by nature, a dangerous weapon, and if it was used to commit a crime, the offender would not have wanted it registered in his name because the gun and any shell casings fired from the gun could be traced back to him. The only factor that weighed in favor of Thomas was that two years had passed between the time the gun was stolen and the time the offenses were committed. Although the final factor weighed in Thomas's favor, consideration of the other factors supported a finding that Thomas knew or had reasonable cause to believe that the gun had been stolen. Accordingly, viewing the evidence in a light most favorable to the state, we conclude that the jury could have reasonably found that the elements of receiving stolen property had been proven beyond a reasonable doubt.
{¶ 24} Although we have only specifically discussed four of the twelve convictions, we hold, on the state of this record, that the remaining convictions were also supported by sufficient evidence.
{¶ 25} Finally, we address Thomas's argument that all of his convictions were against the manifest weight of the evidence. To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[21] Based upon our review of the entire record, we cannot say the jury clearly lost its way and created a manifest miscarriage of justice so as to require a new trial. Accordingly, the first, fourth and eighth assignments of error are overruled.
{¶ 26} In his second assignment of error, Thomas argues that he should not have been separately sentenced for the aggravated robbery of Anthony Jones because that offense should have been merged as an allied offense of similar import with the aggravated robbery of Mary Burnett. Thomas was convicted of two counts of aggravated robbery: one, pursuant to R.C. 2911.01(A)(1), for robbing Burnett of her purse while brandishing a weapon, and the other, pursuant to R.C. 2911.01(A)(3), for inflicting physical harm upon Jones as he was fleeing after robbing Burnett. Thomas maintains that the fact that there was only one theft represented "a single course of conduct which should have resulted in one sentence being imposed."[22] We disagree.
{¶ 27} A strict comparison-of-the-statutory-elements test is now used to determine whether offenses are allied and of similar import.[23]
If the two offenses each contain a separate element, "the offenses are of dissimilar import and the court's inquiry ends the multiple convictions are permitted."[24]
{¶ 28} Here, a conviction for aggravated robbery pursuant to R.C.2911.01(A)(1) required proof that the offender, during the commission of a theft or in fleeing from a theft, brandished a gun. A conviction for aggravated robbery under R.C. 2911.01(A)(3) required that the offender, during the commission of a theft or in fleeing from a theft, "inflict[ed] or attempt[ed] to inflict serious physical harm." With the elements of the two offenses compared in the abstract, the (A)(1) offense required brandishing a gun, whereas the (A)(3) offense did not. Instead the (A)(3) offense required actual physical harm or attempted physical harm. As each offense required proof of an element that the other did not, we hold that they were not allied offenses of similar import. The second assignment of error is without merit.
{¶ 29} In his ninth assignment of error, Thomas asserts that his two convictions for felonious assault with respect to Burnett, pursuant to R.C. 2903.11(A)(1) and (2), involved allied offenses of similar import and, thus, that separate sentences were improperly imposed. The same test set forth in the discussion of the second assignment of error is applicable here.
{¶ 30} R.C. 2903.11(A)(1) requires an offender to knowingly cause serious physical harm to another. R.C. 2903.11(A)(2) requires that an offender knowingly cause physical harm to another by the use of a deadly weapon. Comparing the elements of each offense in the abstract, as required by State v. Rance, we conclude that the (A)(1) offense requires proof of serious physical harm, whereas, for the (A)(2) offense, the physical harm does not have to be serious. Further, the (A)(2) offense requires that the physical harm be caused by a deadly weapon, and that is not an element of the (A)(1) offense. Because each offense requires proof of an element that the other does not, we hold that these offenses were not allied and of similar import. Accordingly, multiple sentences were permitted for the two felonious assaults in this case. The ninth assignment of error is overruled.
{¶ 31} In the seventh and final assignment of error, Thomas maintains that the trial court erred in sentencing him to a cumulative forty-five-year term of imprisonment. Specifically, Thomas asserts that the trial court's order that he was to serve all of the sentences consecutively was cruel and unusual punishment. We disagree.
{¶ 32} "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. * * * [Further,] it is generally accepted that punishments which are prohibited by the Eighth Amendment [to the United States Constitution] are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community. * * * Where the offense is slight, more may be prohibited than savage atrocities. However, the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community."[25]
{¶ 33} A review of the record and the felony sentencing worksheet completed by the trial court demonstrates that consecutive sentences were properly imposed. The court found that the sentences were necessary to protect the public and to punish the offender, and that they were not disproportionate to the seriousness of the offender's conduct.[26] It also made the appropriate findings under R.C. 2929.14(E)(4) and provided its rationale for the findings. In light of the viciousness of the crime rampage, we are persuaded that the sentences were not disproportionate to the seriousness of Thomas's conduct. Accordingly, we hold that the record supports the consecutive sentences and that the sentences did not constitute cruel and unusual punishment. The seventh assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., Hildebrandt and Winkler, JJ.
[1] For a more detailed account of these events, see this court's decision in State v. Watson (Aug. 9, 2002), 1st Dist. No. C-010691, which addressed the appeal of Thomas's co-defendant, Gerald Watson.
[2] See Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[3] See State v. Hill (1995), 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271, citing State v. Hernandez (1992), 63 Ohio St.3d 577, 582-583,589 N.E.2d 1310.
[4] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
[5] Although Thomas did not request a mistrial following the prosecutor's comments, he did object to the alleged misconduct and thus preserved this issue for appeal.
[6] (1976), 426 U.S. 610, 96 S.Ct. 2240
[7] Id. at 618-169, 96 S.Ct. 2240.
[8] (1994), 98 Ohio App.3d 355, 648 N.E.2d 587.
[9] Id. at 359-360, 648 N.E.2d 587.
[10] Id. at 360, 648 N.E.2d 587.
[11] United States v. Newman (C.A.9, 1991), 943 F.2d 115, 118.
[12] Id.
[13] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[14] State v. Jalowiec, 91 Ohio St.3d 220, 228, 2001-Ohio-26,744 N.E.2d 163, citing Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[15] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[16] State v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.
[17] See State v. Durr (1991), 58 Ohio St.3d 86, 568 N.E.2d 674.
[18] See State v. Jenks (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492
("Circumstantial evidence and direct evidence inherently possess the same probative value [and] in some instances certain facts can only be established by circumstantial evidence.")
[19] Wesley v. The McAlpin Co. (May 25, 1994), 1st Dist. No. C-930286, citing Donaldson v. Northern Trading Co. (1992), 82 Ohio App.3d 476,483, 612 N.E.2d 754.
[20] State v. Davis (1988), 49 Ohio App.3d 109, 112, 550 N.E.2d 966.
[21] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[22] R.C. 2941.25.
[23] See State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, paragraph one of the syllabus.
[24] Id. at 636, 1999-Ohio-291, 710 N.E.2d 699.
[25] McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 69-70,203 N.E.2d 334.
[26] See R.C. 2929.14(E)(4).