OPINION
{¶ 1} Jason Caldwell, defendant-appellant, appeals the judgment of the Franklin County Municipal Court, wherein the court found him guilty of driving under the influence of alcohol, in violation of R.C.4511.19(A)(1), a first-degree misdemeanor, and failure to signal, a violation of R.C. 4511.39, a minor misdemeanor.
 {¶ 2} In the late evening of December 13, 2001, appellant was at the Cactus Café in Gahanna, Ohio. Appellant drank two beers and left about one hour later with a friend, whom he was planning to drop off on his way to another bar to shoot pool. Officer Ernest Chung, a Gahanna police officer, pulled up behind appellant's vehicle. Officer Chung observed appellant turn left without signaling. After making the turn, Office Chung witnessed appellant's vehicle cross a white-dotted line by about two tire widths into the adjoining lane. He then observed appellant's vehicle cross into a portion of the center turn lane. Sergeant Dan Williams, who had been following two cars behind Officer Chung's vehicle, told Officer Chung to activate his overhead lights and pull over appellant's vehicle.
 {¶ 3} After pulling over the vehicle, Officer Chung testified that he smelled an odor of alcohol coming from inside appellant's vehicle. Officer Chung noticed appellant was unsteady after exiting the vehicle. Officer Chung then performed the Horizontal Gaze Nystagmus ("HGN") test, the heel-to-toe test, and the one-leg-stand test on appellant. Believing appellant to be under the influence of alcohol, Officer Chung arrested appellant. Appellant was charged with driving while under the influence of alcohol ("DUI"), a violation of R.C. 4511.19(A)(1), a first-degree misdemeanor, and failure to signal, a violation of R.C. 4511. 39, a minor misdemeanor.
 {¶ 4} On April 17, 2002, a jury trial was held on the DUI count, and the failure to signal count was heard by the trial court. On April 18, 2002, the jury found appellant guilty of driving while under the influence of alcohol, and the trial court found appellant guilty of failing to signal. For the DUI offense, the trial court sentenced appellant to 180 days' incarceration, suspended 120 of the days, placed appellant on probation for three years, fined him $400, and suspended his operator's license for three years. For the failure to signal offense, the court imposed a fine of $100, but suspended the fine. Appellant appeals the judgment of the trial court, asserting the following three assignments of error:
 {¶ 5} "[I.] The jury verdict was not supported by sufficient credible evidence and was against the manifest weight of the evidence. As a result, Appellant was denied due process protections under the state and federal Constitutions.
 {¶ 6} "[II.] The prosecutor improperly stated in closing argument that Appellant failed to deny that he was guilty or that he had driven while impaired.
 {¶ 7} "[III.] The trial court erred in instructing the jury that it could consider Appellant's refusal to take a urine test as proof that he knew he was alcohol impaired when he repeatedly asked to take a breathalyzer exam."
 {¶ 8} We will first address the evidentiary issue raised in appellant's third assignment of error. Appellant argues in his third assignment of error the trial court erred in instructing the jury that it could consider appellant's refusal to take a urine test as proof he knew he was alcohol impaired when he repeatedly asked to take a breathalyzer test. Appellant maintains the instruction ignored the fact that the police denied his repeated requests to take a breathalyzer test. Appellant did not raise this issue at the trial court level; therefore, he has waived this issue on appeal, absent plain error. Crim.R. 30(A); State v. Wickline (1990), 50 Ohio St.3d 114. The trial court gave the following instruction to the jury:
 {¶ 9} "Also, ladies and gentlemen, evidence has been introduced indicating that the defendant was asked, but refused to submit to a chemical test of his urine to determine the amount of alcohol in his system for suggesting that the defendant believed he was under the influence of alcohol. If you find that the defendant refused to submit to said test, then you may consider that as part of the evidence in lieu of the basis for the defendant's refusal was because he believed he was under the influence of alcohol or for some other good faith basis.
 {¶ 10} "The law does not require you to reach either conclusion, but it does permit you to consider the evidence along with all the other evidence on the issue of being under the influence of alcohol and assign to it such amount of weight as you deem proper. Now, the law does permit the testing agency to designate the test to be given."
 {¶ 11} When determining whether a trial court erred in its jury instructions, an appellate court reviews the instruction as a whole. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410. A trial court has broad discretion in instructing the jury. State v. Smith (Apr. 2, 2002), Franklin App. No. 01AP-848.
 {¶ 12} Appellant maintains the trial court committed plain error in directing the jury to infer appellant's guilty intent from his refusal to take the urine test. We disagree. The trial court did not direct the jury to infer appellant's guilt. The instructions clearly indicate the jury may find appellant's refusal was due to the fact he knew he was under the influence of alcohol and instructed the jury that it was not required to reach such conclusion. Further, the instructions specifically allowed the jury to consider that appellant's refusal was for some other good-faith basis. Also, appellant's arguments that a breathalyzer test was readily available and that the results of both tests would have yielded the same results are based upon facts not in evidence. There was no testimony as to either of these contentions. In addition, the jury instruction was consistent with 4 Ohio Jury Instructions 545.25(10), which was specifically approved by the Ohio Supreme Court in Maumee v. Anistik (1994), 69 Ohio St.3d 339. In Maumee, the court stated that such an instruction may be given whether the refusal is conditional, unequivocal, or a combination thereof. Despite appellant's attempt to characterize his refusal as neither conditional nor unequivocal, we find it was unequivocal. Appellant was asked to take a urine analysis, and he refused. It was for the jury to determine appellant's credibility and decide the significance of his refusal to take the test. For the following reasons, we find the trial court did not err in giving the jury instructions regarding appellant's refusal to take the urine test. Appellant's third assignment of error is overruled.
 {¶ 13} Appellant argues in his first assignment of error the trial court's judgment was based upon insufficient evidence and against the manifest weight of the evidence. We will address them separately. The test for sufficiency of the evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, wherein the Ohio Supreme Court stated:
 {¶ 14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 15} Though evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis sic.) State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. In making its determination on this issue, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Appellate courts are cautioned to sustain a manifest weight argument in exceptional cases only where the evidence "weighs heavily against the conviction." Id.
 {¶ 16} In the present case, appellant was found guilty of driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1), which provides:
 {¶ 17} "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
 {¶ 18} "(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse[.]"
 {¶ 19} Appellant attacks the results of the field sobriety tests, i.e., the HGN, the heel-to-toe, and the one-leg-stand tests, claiming the police officer did not strictly comply with the standardized testing procedures contained in the DWI Detection and Standardized Field Sobriety Testing, Student Manual, which, we note, was not admitted as evidence at trial. Appellant argues that strict compliance is required by State v. Homan (2000), 89 Ohio St.3d 421. In Homan, the Ohio Supreme Court held that "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id., paragraph one of the syllabus. "When field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable." Id. at 424. Quoting from the manual, the Supreme Court noted "if any one of the standardized field sobriety test elements is changed, the validity is compromised." Id. at 425. The Ohio Supreme Court went on to state "it is well established that in field sobriety testing even minor deviations from the standardized procedures can severely bias the results." Id. at 426.
 {¶ 20} In the present case, appellant attacks each sobriety test for different reasons. With regard to the HGN test, he asserts that he has been blind in one eye since birth. Appellant points out that the manual indicates if a suspect has an obvious abnormal eye disorder the HGN should not be administered, and because the officer failed to ask appellant about the use of eyeglasses or any eye disorder, the officer did not strictly comply with the manual. With regard to the walk-and-turn test, appellant argues that Officer Chung's memory was incomplete, because he admitted some of his memory was not clear and he did not remember how many decision points out of eight possible he determined. Officer Chung also could not recite the number of "clues" he observed and appellant's final score. With regard to the one-leg-stand test, appellant argues that, although the manual requires an individual maintain balance for at least 30 seconds, Officer Chung was unsure of the actual length of time appellant kept his foot raised. Appellant also testified the officer did not describe the count in his instructions and never told him that he should count as he stood.
 {¶ 21} Appellant claims these tests are unreliable because they were not administered in strict compliance with the manual pursuant to Homan. However, the majority holding in Homan refers only to the limitation when making determinations of probable cause, and does not refer to use at trial. Although some courts have found evidence of these tests should be admissible at trial as lay witness testimony from the testing officer, this court has held that the logical extension of Homan is that field sobriety test results are admissible at trial as evidence of guilt only if the administering officer strictly complied with the standardized testing procedures. See State v. Pingor (Nov. 20, 2001), Franklin App. No. 01AP-302, citing Homan, supra, at 429 (Rocco, J., concurring, "I would extend the court's holding here to explicitly state that field sobriety test results are admissible at trial only if the officer strictly complied with standardized testing procedures."). Thus, following our previous precedent in Pingor, if we were to find that Officer Chung did not strictly comply with the requirements of the manual, his testimony regarding the tests would have been inadmissible.
 {¶ 22} However, in the present case, appellant did not file a motion to suppress and never raised at trial that the evidence should be inadmissible. Thus, we do not have an issue of admissibility before us, which was what this court decided in Pingor. What appellant challenges is the reliability of the evidence, arguing that such evidence cannot provide sufficient evidence of impairment or be used in determining whether the verdict finding him impaired was against the manifest weight of the evidence. Despite the finding in Homan and our decision in Pingor that such evidence is "inherently unreliable," such evidence could be considered in determining a sufficiency of the evidence argument. In an insufficient evidence argument, all evidence is construed in favor of the state. It is only in a manifest weight of the evidence analysis that we consider the reliability and unreliability of the evidence. See State v. Winston (1991), 71 Ohio App.3d 154 (in determining whether a verdict in a criminal case is against the manifest weight of the evidence, an appellate court should consider whether the evidence admitted was contradicted or uncontradicted, reasonably credible or fundamentally incredible, and reliable or unreliable). In a pre-Homan case in which it was shown that the officer did not properly administer two of the three field sobriety tests, the court held in State v. Black (Nov. 20, 1992), Geauga App. No. 91-G-1662: "[a]s to the issue of the field sobriety tests * * * while the reliability of the test results were attacked successfully, the officer's testimony was not rendered incredible. Under these circumstances, it was for the jury to decide whether the test had been performed correctly and the results were reliable."
 {¶ 23} Nevertheless, we need not address the results of the field sobriety tests. Even without considering the field sobriety tests, there was sufficient evidence otherwise to find appellant was under the influence of alcohol. Appellant asserts there were minimal signs of bad driving. He points out that he only "momentarily" crossed a dotted-white line, he drifted into the center turn lane by only two tire widths, his failure to signal from a turn-only lane was insignificant, he immediately and flawlessly pulled to the side of the road after the police officer activated his beacons, he parked without striking the curb, and his movements were slow and deliberate so he would not make any sudden movements to startle the police.
 {¶ 24} At trial, Officer Chung testified that appellant failed to use his turn signal when turning at a major intersection. He testified that appellant's vehicle then began to weave "heavily," crossing over a white-dotted dividing line by two tire widths and swerving to the left and crossing over a solid yellow line by two feet. He stated that Sergeant Dan Williams was behind him in a cruiser and witnessed appellant's driving. He testified that when appellant rolled down his window, he smelled an odor of alcohol emanating from the vehicle. He stated that appellant's movements in retrieving his license and registration were slow, deliberate, and thought out. Officer Chung said that appellant was really slow and seemed very unsure of what he was doing. When he got out of his car, he was "unsure" on his feet and swayed. Officer Chung also said that appellant's speech was slurred. Further, Officer Chung stated that at the police station, appellant became argumentative. Appellant indicated that he wanted to take a breathalyzer test instead of a urine analysis. He told Officer Chung he had a relative who was an officer who told him that he could choose which type of test to take. As a result, appellant refused to take a urine test. Officer Chung also testified that appellant turned his back to him while he read him his Miranda rights. Officer Chung concluded that appellant's impairment affected his ability to operate his vehicle.
 {¶ 25} Sergeant Williams testified that he was behind Officer Chung's vehicle and observed appellant's vehicle weaving between and straddling the white-dotted line by a half-car length. He said that appellant's driving gave every indication of an impaired driver. Upon seeing appellant weave almost fully into a turn-only lane, he advised Officer Chung to pull appellant over. He stated that after appellant exited his vehicle, he was mumbling and moving slowly. Appellant's speech was thick and unclear. He seemed to be working hard to pronounce words clearly and he did not have a smooth and steady gait. Sergeant Williams indicated that appellant's attempts to appear smooth and steady made him appear stiff. Sergeant Williams testified that from observing appellant's walk and speech, he appeared intoxicated and impaired. Sergeant Williams said that after appellant exited his vehicle, his eyes were glassy. Further, Sergeant Williams testified that at the police station, appellant was upset and began a heated discussion with Officer Chung regarding a urine test. He also stated that appellant refused to take such test, claiming he had a relative who told him he could choose whichever test he wanted.
 {¶ 26} In finding that a defendant is under the influence of alcohol, a trial court properly considers the defendant's appearance and behavior, including his ability to perceive, make judgments, coordinate movements, and safely operate a vehicle. State v. Moine (1991),72 Ohio App.3d 584, 586; Newark v. Lucas (1988), 40 Ohio St.3d 100,103-104. Further, an inability to follow traffic signs or laws may indicate impaired driving skills. See State v. Orihel (Jan. 28, 2002), Athens App. No. 01CA33. The lack of coordination is also an indication of being under the influence and that one's ability to operate a motor vehicle is affected. State v. Littleton, Fairfield App. No. 01CA30, 2002-Ohio-2521. In addition, glassy, bloodshot eyes, lack of balance, and a strong odor of alcohol emanating from a person may provide sufficient evidence of intoxication. See State v. Gray (Apr. 19, 2001), Paulding App. No. 11-2000-16. Slurred speech may also be considered evidence of intoxication. State v. Davis (Apr. 22, 2002), Jackson App. No. 01CA12. Police observation of a defendant's inability to keep his car in the marked lane may also be considered evidence of impairment. State v. Stuble (Aug. 10, 2001), Lake App. No. 2000-L-082.
 {¶ 27} Based on the testimony of Officer Chung and Sergeant Williams, appellant's slow, deliberate movements could have been interpreted by the jury as signs of intoxication. Both Officer Chung and Sergeant Williams testified they thought appellant was intoxicated based on their observations of appellant's slurred, thick speech, his failure to keep his car in the marked lane, his failure to properly signal, and his unsteady and forced gait. In addition, Officer Chung smelled alcohol about appellant's person, and Sergeant Williams noted that appellant's eyes were glassy. Finally, as we found above, appellant's refusal to take a breathalyzer test was admissible evidence at trial. Maumee, supra, at 342; Columbus v. Maxey (1988), 39 Ohio App.3d 171, 172. See, also, R.C.4511.19(A). Hence, in addition to other testimony from police officers, the jury could properly consider appellant's refusal to perform the breathalyzer test in arriving at its verdict. Even without considering the testimony and evidence regarding the field sobriety tests, Officer Chung's and Sergeant Williams' testimony was sufficient evidence that appellant's ability to drive was impaired. We find that the testimony and evidence, when viewed in a light most favorable to the prosecution, as we are required to do, would convince the average mind of appellant's guilt beyond a reasonable doubt.
 {¶ 28} Having addressed appellant's argument regarding sufficiency, we must turn our attention to his assertion that the convictions were against the manifest weight of the evidence. Upon reviewing the entire record and evaluating the evidence, we determine that the weight of the evidence also supports appellant's R.C.4511.19(A)(1) conviction for driving while under the influence of alcohol. With regard to the testimony of Officer Chung and Sergeant Williams, in addition to the testimony summarized above, both conceded they were in full uniform with their guns in their holsters, but said appellant did not appear nervous. Officer Chung admitted that appellant pulled his car over without hitting the curb. The officers' testimony also indicated that appellant answered questions consistently. Officer Chung further said that appellant did not fumble for his license and registration and retrieved the appropriate documents. Officer Chung stated that appellant acted fine when exiting his car, and he did not stumble. Sergeant Williams testified that he did not see appellant speed up, drive slowly, or brake erratically before pulling him over. He admitted that appellant was obeying traffic signals and complied immediately with the signal to pull over. Sergeant Williams and Officer Chung both conceded they did not know how appellant usually spoke or walked and could not make any comparison.
 {¶ 29} Appellant testified on his own behalf. He testified that he stayed at the bar for approximately one hour, during which time he drank two beers. He stated that he did not know why the police pulled him over. He stated that, contrary to Officer Chung's testimony, he did use his turn signal when turning at the intersection. Appellant also stated that he never swerved outside his marked lane. Further, appellant testified that he usually does not slur his speech and he did not remember his speech being slurred the night of the incident. Appellant stated that he refused to take the urine analysis because a family member, who is on the Columbus Police force, had previously told him he had a choice of which test to take. He also testified that he did not turn his back to Officer Chung while he was read his Miranda rights.
 {¶ 30} After reviewing the entire record, weighing the evidence and all reasonable inferences, we find the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Without considering any evidence regarding field sobriety tests, the only issue with regard to manifest weight of the evidence was whether the officers were telling the truth about appellant's driving, appearance, and behavior, or whether appellant was telling the truth. However, the weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact. State v. Burdine-Justice (1998),125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377. In the present case, the jury apparently found the officers' testimony credible. It is possible the jury found appellant's version of the night's events not credible, given that he basically testified the police officers lied about every observation they claimed to have witnessed that evening. Appellant's unsupported assertions that the officers were mistaken in every key aspect of their testimony are not so compelling that this court would be inclined to go against the original factfinder's determination of credibility. In sum, given the evidence and testimony of the police officers, this is not an exceptional case in which the evidence weighs heavily against the conviction. Therefore, even when not considering the evidence and testimony with regard to the field sobriety tests, appellant's conviction was not against the manifest weight of the evidence. Thus, appellant's first assignment of error is overruled.
 {¶ 31} Appellant argues in his second assignment of error the prosecutor improperly stated in closing argument that appellant failed to deny he was guilty or that he had driven while impaired. At trial, the prosecutor made the following statement in his closing argument:
 {¶ 32} "Again, both Officer Chung and Lieutenant Williams testified that Mr. Caldwell was very argumentative, but you know, it wasn't — you didn't hear any testimony, not from the officers nor from Mr. Caldwell, that the protestations on his part had something to do with the fact that he didn't do it. Did you hear him say that? Did you hear him say that at any point in his testimony? Well, in his opinion he wasn't impaired. I will say he did say that. But how about at the police station? Did the officers testify to that? Did Mr. Caldwell say that he told them he didn't do it? No, we didn't hear that."
 {¶ 33} The test for prejudice in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Hessler (2000),90 Ohio St.3d 108, 125, citing State v. Smith (1984), 14 Ohio St.3d 13,14. In the present case, the defense failed to object to the prosecutor's argument; thus, we must confine our review to the plain error doctrine. See State v. Moreland (1990), 50 Ohio St.3d 58, 62. Under Crim.R. 52(B), we may address plain errors or defects affecting a substantial right, although they were not brought to the attention of the trial court. Id.; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." State v. Franklin (1991), 62 Ohio St.3d 118,128. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus.
 {¶ 34} In the present case, the prosecutor's closing comments may be classified into two categories. Part of the prosecutor's closing argument seems to refer to appellant's failure to proclaim his innocence prior to the reading of his rights under Miranda v. Arizona (1966),384 U.S. 436, 468, 86 S.Ct. 1602, fn. 37, which were given sometime after arriving at the police station, while part of his closing argument seems to refer to appellant's failure to protest his innocence after being read his Miranda rights. Thus, we will address the prosecutor's statements as if they refer to both appellant's pre-Miranda silence and his post-Miranda silence.
 {¶ 35} With regard to post-Miranda silence, the state is precluded by Miranda from the substantive use of a defendant's silence during police interrogation to prove the defendant's guilt. Where a defendant maintains silence after receiving Miranda warnings, Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, prohibits the prosecution from using that absence of speech for impeachment purposes in cross-examination or in closing argument. In Doyle, at 618, the Supreme Court held:
 {¶ 36} "[W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."
 {¶ 37} Thus, the holding in Doyle rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. Greer v. Miller (1987), 483 U.S. 756,763, 107 S.Ct. 3102; Wainwright v. Greenfield (1986), 474 U.S. 284, 291,106 S.Ct. 634.
 {¶ 38} In the present case, we find the prosecutor's statements were improper and violative of the holding in Doyle. This court, as well as numerous other courts, has found statements made by a prosecutor during closing argument, pointing out the failure of an accused to proclaim his innocence after receiving his Miranda warnings, improper. See State v. Sabbah (1982), 13 Ohio App.3d 124, 134 (it was violative of due process of law under the Fourteenth Amendment for the trial court to allow the prosecution to use in summation the fact that appellant remained silent following his receipt of the Miranda warnings); State v. Johnson (July 3, 1997), Lake App. No. 96-L-012 (the use of statements as substantive evidence of guilt during closing argument that defendant did not give a statement to the police when his two brothers had given theirs was fundamentally unfair, deprived the defendant of a fair trial, and was a violation of due process); State v. Gentry (Nov. 19, 1991), Franklin App. No. 91AP-370 (the state's comment on defendant's post-Miranda silence during closing argument violated due process and constituted prejudicial error); State v. Flowers (Nov. 1, 1991), Trumbull App. No. 90-T-4452 (the prosecution's reference to defendant's post-Miranda silence during closing arguments was improper). We find the reasoning in these cases applicable to the present case.
 {¶ 39} The state argues that a fair reading of the prosecutor's remark should lead us to find that the statement was merely an attempt to contrast the conflicting testimony, pointing out that appellant testified at trial that he was not intoxicated, but neither he nor the officers testified that he ever claimed such at the police station. We disagree with this characterization. The prosecutor's comments were clearly aimed at calling attention to appellant's failure to proclaim his innocence at the police station and were an attempt to present such as substantive evidence of his guilt. The effect of the prosecutor's remarks was to suggest to the jury that appellant must be guilty because an innocent person would not have remained silent. Doyle prohibits this. Although the comments were somewhat indirect, in that they sought to emphasize appellant's failure to protest his innocence by citing the lack of testimony to the contrary, the state may not get around the prohibitions in Doyle by taking this circuitous route. For the foregoing reasons, the comments by the prosecutor referring to both appellant's and the officers' testimony regarding appellant's post-Miranda silence were improper.
 {¶ 40} Further, appellant contends the prosecutor's references to his pre-Miranda silence during closing arguments were also improper. In Fletcher v. Weir (1982), 455 U.S. 603, 102 S.Ct. 1309, the United States Supreme Court distinguished Doyle and held that where a defendant was not advised of his Miranda rights, it is not a violation of due process:
 {¶ 41} "* * * for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." Id. at 607.
 {¶ 42} However, Fletcher is distinguishable from the present case in that appellant's pre-Miranda silence was raised in the prosecutor's closing argument rather than in the prosecutor's cross-examination of appellant. "When a defendant's postarrest silence is raised for the first time in the prosecutor's closing argument, it is not being raised for impeachment purposes and the defendant is further prejudiced in that he or she is afforded no opportunity to call rebuttal witnesses." State v. Saunders (1994), 98 Ohio App.3d 355, 359. Fletcher is also distinguishable in that the prosecutor's comments in the present case were based, in part, upon the testimony of the two arresting police officers, which was elicited during the state's case-in-chief and not derived from cross-examining appellant.
 {¶ 43} In addition, this court has previously held a prosecutor commits prejudicial error when, in closing argument to the jury, the prosecutor comments upon a defendant's silence during a pre-Miranda interrogation. See State v. Baird (Sept. 17, 1996), Franklin App. No. 96APA03-286 (it was improper for prosecutor to comment in closing argument that during the whole time prior to appellant's arrest, he did not "say a word"); Gentry, supra, (even if prosecutorial comments were based on pre-Miranda silence, such factual distinction does not render the prosecutor's argument proper). Id., citing State v. Stephens (1970),24 Ohio St.2d 76, paragraph three of the syllabus ("Where, during an in-custody interrogation, a defendant chooses to remain silent, it is prejudicial error for the prosecutor, during his final argument to the jury, to comment upon that silence or any implications which may be drawn therefrom."). Other courts have found similarly. See, e.g., State v. Geboy (2001), 145 Ohio App.3d 706 (it was improper for prosecutor to elicit evidence regarding defendant's failure to protest his innocence prior to Miranda warnings and mention such failure in opening and closing arguments because it seriously affected the outcome of the trial and resulted in unfair prejudice).
 {¶ 44} However, even if the prosecutor's comments in his closing argument were improper, we must still analyze whether the error constituted plain error, given that appellant's defense counsel did not object to the statement. In State v. Hill (2001), 92 Ohio St.3d 191,203, the Ohio Supreme Court held that no precedent mandates a summary "per se" finding of plain error in cases such as these that would allow a reviewing court to dispense with the full plain-error inquiry. The court further stated that, as part of the inquiry into whether plain error occurred, a reviewing court " `must examine the error asserted by the [defendant] in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.' " Id., quoting State v. Slagle (1992),65 Ohio St.3d 597, 605. As we indicated above, reversal is warranted only if the outcome of the trial clearly would have been different absent the error.
 {¶ 45} We have already found there was sufficient evidence to convict appellant and appellant's conviction was not against the manifest weight of the evidence. Given these determinations and our review of the record, we do not believe the outcome of the trial would have clearly been different without the error. Even if the prosecutor had not made the offending comments, the jury would have had sufficient evidence to convict appellant. Thus, although the prosecutor's comments during closing argument regarding appellant's silence were improper, we do not find they rise to the level of plain error under the circumstances of this case. Appellant's second assignment of error is overruled.
 {¶ 46} Accordingly, we overrule appellant's three assignments of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
LAZARUS, J., and PETREE, P.J., concur.